NOTICE
Decision filed 12/02/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200288-U

NO. 5-20-0288

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 16-CF-403 |
| | ) | |
| RANDI JOHNSON, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Where defendant's postconviction claims were either vague and conclusory, barred by *res judicata*, or related to a charge of which defendant was acquitted, the circuit court properly dismissed the petition. As any argument to the contrary would lack merit, we grant the defendant's appointed counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2     Defendant, Randi Johnson, appeals the circuit court's order dismissing his postconviction petition. Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing that this appeal presents no arguably meritorious issues. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion. This court provided defendant with an opportunity to file a response, but he has not done so. After reviewing the record, OSAD's motion, and its supporting memorandum, and the entire

1

record on appeal, we agree that this appeal presents no arguably meritorious issue. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4       Shortly before Easter 2016, defendant had an argument with his girlfriend, Sade Mason. He temporarily left the home that he shared with Mason and their three children and stayed with his grandmother. On Easter morning, he returned intending to take the children to church and to a family Easter party. When he arrived, he found a man he did not know—Roderick Harris— inside the house. Harris was a high school friend of Mason.

¶ 5       According to Harris, he was carrying an inoperable BB gun that he used to frighten potential assailants. When defendant arrived, he and Mason were upstairs talking. Mason went downstairs to talk to defendant. Harris could hear the conversation getting heated, so he hid in a closet. Despite Mason's admonitions, defendant went upstairs and eventually found Harris hiding in the closet. Defendant then left the house and drove away while Harris called his friend Terry Cox for a ride home.

¶ 6       Before Cox arrived, defendant returned to the house with a gun. Harris left the house and ran across the street. As he did so, defendant fired three to four shots at him, all of which missed. Cox arrived while defendant was shooting at Harris, so Cox drove down the street before turning around and returning to the scene. As Cox stopped to pick up Harris, defendant pulled his car alongside and fired six or seven shots at the car. Both Cox and his pregnant girlfriend, Jada Hall, were struck.

¶ 7       In defendant's version of the encounter, he acted in self-defense. When he encountered Harris inside the house, he feared that he was there to rob Mason. Harris pulled a gun and struck defendant with it. The gun fell to the floor and defendant reached it first. Harris then pulled out a

2

second gun, so defendant shot at him. Harris turned around and ran. Defendant continued shooting at Harris but stopped when he ran across the street.

¶ 8 Defendant got into his car to leave and call the police. As he was backing out of the driveway, another car pulled up. He saw a window in the other car being opened and shot at the car. He testified that he feared someone in the other car would shoot at him but acknowledged that no one from the car shot at him. He explained that he was suspicious because he had just had a gun pulled on him.

¶ 9 A neighbor, Jennifer Washington, testified that, a few minutes after defendant entered the house, she saw a black man—Harris—walk backward out of the house. He pulled out a gun and pointed it toward the house but did not fire. Then defendant came out and began shooting. Washington ran inside and told her children to get down on the floor. She thus did not see any more of what was happening outside, but she heard nine additional shots.

¶ 10 Illinois State Police crime scene investigator Virgil Perkins testified that he found 10 shell casings in the vicinity of the house. He found six "defects" in Cox's car consistent with bullet holes, and he located Harris's BB gun in the car. Perkins admitted that he began a romantic relationship with Mason after he began investigating the case but testified that it ended prior to trial.

¶ 11 Defendant was charged with one count of attempted aggravated battery for shooting at Harris, two counts of aggravated battery for shooting Cox and Hall, and one count of aggravated discharge of a firearm for shooting at Cox's car. The jury acquitted defendant of attempted aggravated battery but found him guilty of two counts of aggravated battery and one count of aggravated discharge of a firearm. The trial court imposed 12-year sentences on each of the two

3

aggravated battery convictions and an 8-year sentence on the aggravated discharge of a firearm conviction, with all sentences to be served concurrently.

¶ 12    On direct appeal, defendant argued that his sentences were excessive. We disagreed and affirmed. *People v Johnson*, 2020 IL App (5th) 170162-U.

¶ 13    While his direct appeal was pending, defendant filed a petition for relief from judgment. He contended first that forensic scientist Thomas Gamboe committed perjury when he testified that he never recovered defendant's firearm.[1] He contended second that Perkins committed perjury when he testified that his relationship with Mason had ended before trial. Defendant attached an affidavit from Mason asserting that their relationship was ongoing. Defendant finally contended that Harris lied when he testified that he did not have a second gun. According to Mason's affidavit, Harris had a real gun which he dropped after a struggle and then pulled out a BB gun. The trial court granted the State's motion to dismiss and defendant did not appeal.

¶ 14    Defendant then filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) purporting to raise five claims. First, defense counsel was ineffective for failing to call Deputy Lee Rinehart to testify about his interview with Washington in which she made statements that would have impeached Harris's testimony that he did not have a second gun. Second, the court erred in allowing Perkins's testimony. Third, counsel was ineffective for failing to call Mason to impeach Harris's testimony about having a second gun. Fourth, counsel was ineffective for failing to attack the indictment for violating the one-act, one-crime doctrine. Fifth, the court erred in "failing to dismiss the State's case where the State willfully violated its own motion *in limine*."

---

[1]According to the State's motion to dismiss, Gamboe answered negatively the prosecutor's question whether *in this case* he had received any firearms for testing. Apparently, defendant's gun was recovered in connection with an unrelated case.

4

¶ 15    The trial court summarily dismissed the petition.  Defendant timely appealed.

¶ 16                                ANALYSIS

¶ 17    OSAD concludes that it can make no arguably meritorious contention that the trial court erred by dismissing the petition.  We agree.

¶ 18    The Act provides a mechanism for a defendant to assert that his or her conviction resulted from a substantial denial of his or her constitutional rights.  *People v. Delton*, 227 Ill. 2d 247, 253-54 (2008).  Section 122-2 of the Act requires that the petition must, among other things, "clearly set forth the respects in which petitioner's constitutional rights were violated."  725 ILCS 5/122-2 (West 2018).

¶ 19    When a petition is filed, the circuit court has 90 days in which to review it and decide whether, on its face, "the petition is frivolous or is patently without merit."  *Id.* § 122-2.1(a)(2).  If the court finds that the petition is either frivolous or patently without merit, it "shall dismiss the petition in a written order."  *Id.*  A petition is considered frivolous or patently without merit if its allegations, taken as true, fail to present the gist of a meritorious constitutional claim.  *People v. Collins*, 202 Ill. 2d 59, 65-66 (2002).  "Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act."  *People v. Coleman*, 183 Ill. 2d 366, 381 (1998).  The purpose of section 122-2 is to establish that a petition's allegations are capable of "objective or independent corroboration."  *People v. Hall*, 217 Ill. 2d 324, 333 (2005).

¶ 20    The issues raised in defendant's petition fall into three general categories.  The fourth and fifth issues require little discussion for, after listing them in the statement of issues, defendant does not mention them again.  Without any factual detail, these are exactly the sort of "[n]onfactual and nonspecific assertions" that the Act does not allow.

¶ 21    Defendant does not explain, for example, how the indictment violates the one-act, one-crime rule.  With regard to the last issue, he does not even specify which *in limine* order the State allegedly violated, much less explain why he was so severely prejudiced that *sua sponte* dismissal of the indictment was the only effective remedy.

¶ 22    Defendant's first and third issues are similar.  In each claim, he alleges that defense counsel was ineffective for failing to call Deputy Rinehart and Sade Mason to impeach Harris's testimony that he had only one gun during the incident.  To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant.  *People v. Cherry*, 2016 IL 118728, ¶ 24.  "Decisions concerning what witnesses to call and what evidence to present on a defendant's behalf are viewed as matters of trial strategy.  Such decisions are generally immune from claims of ineffective assistance of counsel."  *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002).

¶ 23    Mason would have testified that Harris did indeed have a second gun on the day of the incident.  Rinehart allegedly would have testified about an interview with Washington in which she said she saw a black man she did not recognize walking backward away from Mason's home while pointing a gun in that direction.  Apart from being strategic decisions by defense counsel, defendant cannot establish that he was prejudiced by the failure to call these witnesses.

¶ 24    Defendant was acquitted of the only count involving Harris.  Defendant was convicted on three counts alleging that he fired at Cox and Hall.  Defendant admitted that he fired several shots toward Cox's car.  He said that he did so because he saw the window being rolled down.  Thus,

the number of guns that Harris had simply had nothing to do with defendant's decision to shoot at Cox and Hall.[2]

¶ 25    Finally, defendant cannot establish prejudice resulting from the trial court's failure to bar Perkins's testimony.  As OSAD points out, this claim was raised in defendant's petition for relief from judgment and thus is barred by *res judicata*.  *People v. O'Neil*, 319 Ill. App. 3d 609, 611 (2001) (postconviction petitioner cannot avoid the bar of *res judicata* by merely rephrasing issues previously raised).

¶ 26    Moreover, the precise date when Perkins's and Mason's relationship ended was not probative of whether defendant shot at Cox and Hall in self-defense.  At most, it would have impeached a witness on a collateral issue.  See *People v. Collins*, 106 Ill. 2d 237, 269 (1985) (witness may not be impeached on a collateral matter).

¶ 27    In any event, even had Perkins's testimony been stricken in its entirety, the result of the proceeding would not have been different.  Perkins's only testimony concerning Cox and Hall was that the windows of Cox's car were broken, he found bullet holes in the car, and he found Harris's BB gun in it.  As to the first two statements, defendant admitted shooting at the car, so the presence of broken glass and bullet holes was hardly surprising.  And his testimony that he found Harris's BB gun in Cox's car further corroborated defendant's and Washington's testimony that Harris had some type of gun with him when he left Mason's house.

---

[2]OSAD also points out that Washington testified at trial that she saw a black man backing away from the house while pointing a gun in that direction.  Thus, in addition to being hearsay, Rinehart's testimony about the interview with Washington likely would have been found inadmissible as a prior consistent statement of Washington.  See Ill. R. Evid. 613(c) (eff. Sept. 17, 2019).

¶ 28                                    CONCLUSION

¶ 29    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and

affirm the circuit court's judgment.


¶ 30    Motion granted; judgment affirmed.